## St. Louis, B. & S. Ry. Co. v. Edward C. Rice.

1. LIMITATIONS—*New Promise by a Corporation.*—A new promise by one having authority to bind a corporation generally is sufficient to remove the bar of the statute of limitations as to such corporation.

St. L., B. & S. Ry. Co. v. Rice.

Assumpsit, for money expended.  Appeal from the Circuit Court of St. Clair County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1896.  Affirmed.  Opinion filed March 3, 1897.

G. A. KOERNER, attorney for appellant.

EDWARD L. THOMAS, attorney for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

The evidence in this case is conflicting in many particulars, but the court, trying the case without a jury, was justified in finding the facts to be as hereinafter stated.

In 1880 Charles W. Thomas held all the stock of the Belleville City Railway Company, except a very few shares which had been taken by some of his friends.  He was secretary of the company.  The nature and conduct of the business and the attendant circumstances show that Thomas, who was the owner of about 490 of the 500 shares of stock, was authorized to act for the company generally, and therefore to make such agreements on its behalf as he might deem proper.

Accordingly Thomas authorized appellee to buy a certain right of way for the company for $1,500, and promised appellee for the company that the latter should repay him the amount so advanced whenever the charter should be utilized.  There was a transfer of stock to appellee under an agreement by which he was to become the owner of the franchise on certain conditions, but these conditions were not fulfilled and the stock was retransferred by him to Thomas.  This transaction does not affect the liability of the company to pay its indebtedness to appellee in accordance with the agreement above mentioned.

Appellee paid $1,500 for the right of way and caused it to be deeded to the company.

The only assets of the company were its charter and subscription list, no part of the stock having been paid.

Thirteen years passed away, and Samuel H. Leathe, of

St. Louis, with others, decided to build a railroad from East St. Louis to Belleville. Leathe was the leading spirit of the enterprise, and was induced by Thomas to act under the charter of the said company, inasmuch as the provisions of the charter were especially liberal.

He was informed by Thomas that the $1,500 due appellee, and $500 due himself must be paid by the company, and Leathe acquiesced in this requirement.

At the beginning of the negotiations, when Mr. Leathe examined the charter of the company in the expectation of becoming a purchaser of all the stock, with the exception of a very few shares, the indebtedness of the company to appellee was explained to him, and he was informed that if he got the stock the company must pay the amount due appellee without interest. Leathe agreed to do this. Everybody connected with the company understood the matter thoroughly at the time.

Certain meetings of the stockholders and directors were afterward held for the purpose of making arrangements for perfecting the transfer.

In contemplation of the building of the road under the new management, the capital stock was increased to 5,000 shares of $100 each, and the issuance of bonds, secured by mortgage, to the amount of $500,000, for the purpose of raising money to build the road, was ordered.

At a meeting of the directors held on March 25, 1893, a call of one hundred per cent on the capital stock was made, payable on or before May 1, 1893. Thereupon Leathe appeared before the board and proposed to sell and convey to the company certain property for $499,500, and the board accepted this proposition on certain conditions, and accepted his deed as payment of the call on his 4,995 shares, provided he would float the bonds of the company, and account at their par value for all bonds he might take or use in paying for property or *prior indebtedness of the company*.

The evidence shows that this indebtedness was talked over at the time and included the $1,500 due appellee.

Leathe was required to sign and did sign the record of

these proceedings for the purpose of showing his acceptance of the terms of the transfer.

Leathe became the owner of 4,995 of the 5,000 shares of stock, and at a meeting of the stockholders was duly chosen president. Thomas continued to act as secretary. There were seven directors. Waddock, one of the directors, tendered his resignation to Leathe about August 1st, but the resignation was not acted upon or accepted by the board till after the meetings of August 9th and 11th, and he was therefore authorized to meet with the board as one of the directors at those meetings.

Leathe authorized Thomas to call a meeting of the directors for August 9th. This was done, and a quorum was present at the meeting, but the board adjourned till the 11th without transacting any business, and notice of the adjourned meeting was given to the other directors.

At the meeting on August 11th a resolution was passed directing the payment of $1,500 to appellee, as previously agreed upon.

Thomas, who had been acting for appellee all this time with reference to his claim, immediately notified appellee of this resolution.

Leathe was not present at either of these meetings, and insists that they were not lawfully called.

Afterward, on January 24, 1894, appellee called on Leathe and demanded payment of the $1,500 due him, and Leathe answered that the company would pay it in less than two months.

The evidence on many of these questions is conflicting. The backbone of appellant's evidence is the deposition of Samuel H. Leathe, and that of appellee's evidence is the testimony of Charles W. Thomas. Leathe testified as if he was trying to conceal something, while Thomas testified fairly and frankly. The trial court can not be censured for accepting the version of the transactions given by the witness Thomas.

At a meeting of the board, on August 26, 1893, Leathe caused a resolution to be passed rescinding the proceedings

of the meetings of August 9th and 11th, and accepting Waddock's resignation.

From the foregoing facts it is clear :

1.   That in 1890 the Belleville City Railroad Company became indebted to appellee in the sum of $1,500.

2.   That prior to 1893, appellee's claim was barred by the statute of limitations.

3.   That the series of transactions in 1893, from the first conversation between Thomas and Leathe to the resolution passed at the meeting of the board on August 11th, shows beyond question a new promise on the part of appellant to pay the amount due appellee, which is sufficient to remove the bar of the statute of limitations.

4.   That on January 24, 1894, Leathe, who owned nearly all of the stock, and was the corporation for all practical purposes, and had authority to bind appellant by his promise on its behalf, promised appellee that appellant would pay his demand within less than two months, which promise is sufficient to remove the bar of the statute of limitations.

5.   That the resolutions passed on August 11th, which were valid when made, could not be rescinded by the action of the board at a subsequent meeting so as to affect the rights of appellee.

It is said, however, that, even if appellant promised to pay the amount sued for by appellee, yet such promise was a conditional one, and was to the effect that appellee was to be paid out of the proceeds of the sale of the bonds, and that there is no evidence to show that the bonds have been sold.

Without conceding that the promise was conditional, it is sufficient to say that there is an abundance of evidence in the record to show that the bonds were sold two years at least before this action was commenced.

The bonds were issued in 1893, and were placed in Leathe's hands under an agreement by him that he would float them and account for the proceeds.   In the same year, according to the uncontradicted testimony of appellee, and the con-

cession of counsel for appellant in his brief, the road was built from East St. Louis to Belleville. It may be fairly inferred that, inasmuch as the road could not be built without money, and appellant had no resources for that purpose except money to be obtained by the sale of its bonds, the bonds must have been disposed of by Leathe during the year 1893, before the road was constructed.

If this was not the fact, Leathe had the opportunity to say so in his deposition when the question was asked him by appellee's counsel on cross-examination, and he refused to answer, under the advice of appellant's counsel, on the ground that the question was irrelevant.

We hold that the record shows that the bonds were sold in 1893, and the condition upon which the payment to appellee by appellant was to be made was thereby fulfilled; also that the promise made on January 24, 1894, was unconditional.

It is further urged that there is no evidence to connect appellant with the Belleville City Railway Company. Appellant proved by Samuel H. Leathe that after he had become a stockholder, the name of the company was changed from the Belleville City Railway Company to the St. Louis, Belleville & Southern Railway Company, and appellant will not be permitted to assert now that the testimony of its witness is untrue or incompetent.

It is assigned for error that the court erred in holding and refusing certain propositions of law, but this assignment will be treated as having been waived, for the reason that counsel for appellant has not pointed out in his brief or argument filed herein any objections to the rulings of the court on the propositions of law.

The judgment is affirmed.